Correct. You would just go to court. Correct. Yeah, and the way that the settlement agreement is structured, there are kind of two parts. There are released claims leading up to July 31, 2007. And those were released for valuable consideration. And with respect to claims going forward post-July 31, 2007, those are the claims that are at issue going forward and the arbitration provisions discuss how those are to be allocated. So PolyOne is asking for those provisions to be declared invalid. So that would be between Section 3 and Section 15. There are some sections in there that don't exclusively talk about arbitration, Sections 7 through 9, but the rest would be the arbitration provisions. Section 6, would that be invalid? Oh, yes, Your Honor. Section 6. Why are we not just getting rid of the whole agreement at that point? If you don't have a dispute resolution mechanism, why do you even have the agreement? Well, nobody is arguing that the release of those claims before July 2007 is going to be undone. But yes, that really does speak to the materiality of Section 6 and how it really has tentacles throughout the whole agreement. Because without Section 6, the definition of allocable costs in Section 3 is basically meaningless. Section 4 talks about Section 6. I'm sorry, do you agree we should get rid of the whole agreement? No, Your Honor. Nobody is arguing that the whole settlement agreement. But aren't you pointing out how the arbitration provision affects the whole agreement? Yes, Your Honor. So the piece of the agreement that we think would presumably be left intact would be the release of the claims before July 2007 in exchange for valuable consideration. But everything else, virtually everything else, is affected by Section 6. So all of the provisions that require arbitration of allocable costs would be invalidated together with Section 6. So you'd have to go to court on that? Correct. So the cleanup would continue? Is there still a cleanup going on? Yes, Your Honor. The site is still being remediated? Yes, Your Honor. This is an active chemical facility. So all ongoing disputes would just be subject to what would amount to a new litigation? Correct, Your Honor. So perhaps a common law action for contribution or indemnity, potentially a CERCLA action. Poly 1 would retain the obligation to bear the initial responsibility because that's an obligation that is outside the four corners of the agreement. That was an obligation that was imposed by the district court in the 2007 litigation. Nobody is trying to reopen that. So it would just be Poly 1 seeking a reallocation in court instead of in front of the arbitrators. Okay, let's assume we think the arbitration or the de novo review provision is questionable and the arbitration provision goes with it. Why did you invoke arbitration twice previously in this matter instead of challenging the agreement? That's because Poly 1 believed that it had to. When Hall Street came out in 2008, Poly 1 reasonably believed that Section 6 was called into question. But it seems to me even under the terms of the agreement themselves, you don't have to. It says can, not must or shall. I know both parties assume you have to, but the way I read the agreement, at least Section, I think it's 4.1, says can, not must or shall. The agreement provides that arbitration will be the sole remedy and that Poly 1 would be giving it. What section is that? Because it says Section 4.1, either Westlake or Poly 1 can request the other party to modify by submitting to arbitration. I'm summarizing, but what provision exactly are you talking about? Well, first I want to point out that Section 5.3 provides that if the parties do not bring the arbitration within that five-year period, then that initial responsibility will be deemed final. I think that's where that conditional language in 4.1 comes in, that may. Because the parties, that's if they wish to seek a reallocation or an allocation. Explain to me why you didn't forfeit your right because Hall Street came out in 2008. Why couldn't you bring this claim earlier? In this case, the district court laid a heavy burden at Poly 1's feet by requiring to avoid a claim of waiver that it had to predict a change in the law in the future. Wait, but you should always bring, why is it a change in the law? I don't understand. They're just applying, right? The Tenth Circuit was just applying existing law. I mean, Oklahoma, under your theory, Oklahoma didn't have to bring it. That's correct, Your Honor. And Oklahoma, in fact, waited seven years and waited until after there was an arbitration award to bring its argument in favor of it. And you waited until after two arbitrations that you yourself initiated. I think there's several factors that should guide the court's waiver decision in this case. The first is the fact that Poly 1 gained absolutely no tactical advantage in bringing its challenge when it did. It asserted its claim before there was a substantive ruling by the JAMS panel. It immediately notified the JAMS panel and requested a stay as soon as it found out about the Pottawatomie decision. It, in good faith, tried to stay the arbitration to allow the judgement. Even the Tenth Circuit, you're saying a change in law, but the Tenth Circuit's not binding on us. That's correct, Your Honor. So we could disagree with the Tenth Circuit. So you are making an argument without binding authority right now. You could have done that absent the Tenth Circuit decision. That's how a change in law or application of old law to new situations happens every day in America. Yeah. Pottawatomie really was new law because before that there was no case addressing the effect of Hall Street invalidity when a section is invalid under Hall Street because it impermissibly expands the grounds for FAA review. What that does to the rest of the agreement. At the time of Hall Street and post-Hall Street, there's all types of severability cases that existed that address exactly this question. And while it might not be in this context, that's what good lawyering is. You take another situation, you apply it to a new. And also this Court's precedents instruct that waiver is the knowing and intentional relinquishment of a known right. And I think the Ackerberg case, which is persuasive authority out of the Eighth Circuit, is instructive here. And there that arose in the context of a motion to compel arbitration. There they had binding Supreme Court law, which was different. You had binding Supreme Court law that it wasn't arbitrable under the 1933 Act, and then that changed. But there was also a split of authority as to whether subsequent Supreme – there was a split of Circuit authority as to whether subsequent U.S. Supreme Court authority had overruled that previous case, Wilco against Swan. And so the Ackerberg Court said, in this context, the law was uncertain. And so, you know, given that waiver is the knowing, intentional relinquishment of a known right, this is an inappropriate case in which to find waiver. And Poly I would respectfully submit that the ability to make a generic severability argument is not the same as having real authority in hand. It could have cited, in support of its argument, that Section 6 infected the rest of the arbitration agreement. And Poly I really was – I mean, sorry, Potawatomi truly was the first of its kind. Before that, the only authority on point – Go ahead. I'm sorry. The only authority on point with respect to the effect of a Hall Street invalidity was the Ninth Circuit's opinion in Cayucera, which preceded Hall Street, and then the opinion below in Hall Street as well. And that, for one thing, the Cayucera declined to sever because applying the Substance of California law. Cayucera did not have the benefit of – What if there were district courts? I don't believe there were. But what if there was? Would that be enough? I think that would change the situation, but the fact that there was not here speaks volumes. But why – I mean, okay, so the waiver argument, maybe you have prudential arguments on that, but what about the estoppel and the res judicata? I mean, you went to court to enforce the agreement, right? I mean, you affirmatively represented to court, all right, this is a valid agreement, this is fine, we're suing under it, we want these things arbitrated. They shouldn't have their stuff arbitrated? No, Your Honor. In fact, Westlake is mistaken when it contends the poly one affirmatively represented that the agreement was valid. I mean, for one thing, Hall Street – I mean, Pottawatomie had not come out yet. And in the district court's opinion in that 2017 declaratory relief action, that had to do with whether certain construction costs incurred by Westlake were considered allocable costs within the meaning of that agreement. And the district court there was very clear. Page 14 of its order said that neither party disputes that the agreement is valid, therefore the question is whether these are allocable costs. So the district court expressly assumed that that was the case, but there was no dispute. And that was a declaratory relief action. So you were arguing the agreement was invalid? No, Your Honor. There was no argument either way. Both parties were assuming at that point that it was. I have a little different question. It seems to me the way this agreement was written, that what in effect you have is a non-binding arbitration provision. And if it's a non-binding arbitration provision, do all of the rather rigid rules relative to challenging an arbitrator's award, do they even become involved? Because you're not challenging an award. You're taking a step that eliminates the award, as if it never happened. Yeah, and I think that exact feature, that the parties retain the right to render that arbitration non-binding at the election of either party for any reason or for no reason, is precisely the reason why it violates Hall Street, because it expands the scope of judicial review of matters that had been submitted to arbitration. But does it even implicate the FAA at that point? I mean, Judge Guy may be getting at something. Why are we even worried about the FAA if it's just completely optional and there's no real review provision? In most arbitration agreements, the FAA applies because you're going to try to enforce it by judgment in court. So if nobody has to do anything, do we even care about the FAA? Yes, Your Honor, because if this court approves the type of agreement that was section 6 here that provides for trial de novo, rendering the entire arbitration a mere dress rehearsal for what's to follow, the actual trial in court, that would allow parties to contract around Hall Street and make an end run around its central holding, which is that the FAA embodies a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes right away. And if the parties are forced to go through a non-binding advisory at best arbitration, it would essentially make an end run around the FAA. Well, but is it really an end run? I mean, parties can still contract to enter non-binding arbitration, can't they? Not to my knowledge following Hall Street. I believe that Hall Street put an end to non-binding arbitration. I think there's one exception, the Alternative Dispute Resolution Act of 1998, which is 28 U.S.C. 651. I can get the citation for you. But that provides that a district court may refer a matter to non-binding arbitration and then have it returned to court  but that's limited to a very small subset of cases, including matters under $150,000 in controversy. So aside from that one provision, I believe that non-binding arbitration following Hall Street is categorically in violation of the FAA. Okay. Thank you. Thank you, counsel. You'll have your entire rebuttal time. Thank you. David Super for Westlake. Good morning. May it please the court. Judge Russell's finding of waiver was correct and should be affirmed. Polly Wan repeatedly, he waived any right to challenge the validity of the arbitration agreement by repeatedly taking the position over a 10-year period that the arbitration agreement is valid and enforceable, all the while knowing that it had a basis to challenge the agreement. Usually when we think of waiver, we think of, as your friend mentioned, a knowing and intentional relinquishment of a right. Right. And I'm trapped in the criminal context where I always think of a defendant having to affirmatively state that. Why is this waiver? Well, Your Honor, every attorney is charged with knowing what the Supreme Court has announced in its rulings. And the Supreme Court issued a ruling, Hall Street, back in 2008, that called into question Section 6 of the settlement agreement, the de novo judicial determination provision. And Polly Wan is charged with that knowledge. But instead of doing anything about it, Polly Wan initiated two arbitration proceedings against Westlake. So have they waived it forever? They have. I mean, there's authority in this court, Muncie v. GCR, 110 Federal Appendix 552, that once a party has waived a right, it's gone forever. And that's fair because it's based on 10 years. That's not published. But let me ask a different question because it strikes me as odd that essentially let's assume, without deciding for a second, that a contract is illegal under existing law. You could waive the right to challenge an illegal contract is what you're saying. Well, what they're trying to do is use an arguably invalid provision of a contract, Section 6, to then render the entire arbitration agreement invalid. That's what they have waived by twice initiating an arbitration, enforcing the arbitration agreement, and also in the October 2017 lawsuit confirming the validity of that. Do you see what I'm saying? I understand your argument, and there's a lot of logic to it. I'm not disputing that. But how far does the principle go that courts should allow illegal contracts to exist because of waiver? I mean, assuming that's. Assuming. Yeah, you have to assume. Well, you would also get into the whole analysis as to whether Section 6 is material and should be severed. I mean, the waiver point is probably one for 12 years has acted as if this provision they now call their nuclear option wasn't available to them, and yet they still went ahead. Your waiver argument is that the contract should just continue the way it is now, right? So in five years, there could be another arbitration, and somebody's got 90 days to go to court to vacate the award, right? Your Honor, actually, my view is that the best course for this court is to affirm Judge Russell on waiver and, frankly, stop there, and there's a good reason why. But affirming him on waiver means the contract exists the way it does. That is correct. For now. So you had an award in May, right? We had an award in May. That's correct. Does anybody file the lawsuit to vacate it? I'm sorry? Does anybody file the lawsuit? That's exactly my point, Your Honor, and there's a serious question whether that will ever happen, and there's a good reason why. You've heard reference to the fee-shifting provision in Section 6, which is the de novo judicial determination provision, and that is an incredibly draconian provision. The party that lost in the arbitration, if it then takes the risk of bringing a judicial action, it has to reduce its allocation by a whopping 50%. If they had 100% allocation in the arbitration, they've got to take it down to 50% in the litigation, and the parties knew that was next to impossible to achieve. You mean no matter what the result of the lawsuit? That's exactly right. They have to reduce it to 50%, and if they don't, they've got to pay the attorney's fees. What provision of 6 is that? It's 6.53, I believe. I can confirm that for you. It's 6.5. So in the litigation we've had to date, the attorney's fees have been $20 to $30 million, and so if you do not achieve a 50% reduction, you've got to pay $20 to $30 million of the other side's attorney's fees and expert fees, and the parties knew when they entered this agreement that that was an incredibly draconian provision and a huge disincentive to bringing a subsequent judicial action. If you think about it, the party that lost in the arbitration, in order to have the economic incentive to take that risk, to potentially pay $20 to $30 million to the other side, would have had to have lost very badly to have an arbitration number that could be cut in half. And then you look going forward in the litigation, the party who got beaten badly in the arbitration would have to completely reverse its fortunes and win in a landslide in the litigation. So I get that. You're right about that provision, but can I take you back to what you said a minute ago, which is just affirm Judge Russell and don't get into the future. But your answer to my question is they've waived in perpetuity. I think that's right. You've also waived in perpetuity, right? Well, we have not, because we've never taken a position on this issue that has been accepted by a court or an arbitration panel. I thought you invoked arbitration as well. We did not, Your Honor. Arbitration was invoked twice against Westlake, once in 2010. It lasted five years. Who else did? Poly 1 both times. Poly 1 has initiated arbitration in 2010 and again in 2017. Both of those arbitrations. So you could use it as both a sword and a shield? You can avoid them striking this, but you could bring your own action to get rid of this? Well, I think that's an issue that would be best to be taken up once we see if anyone does bring a Section 6 action. That's sort of the point. I mean, right now we've got. So you're saying we don't have to decide. We could say they waived and not decide whether in five years if they try to do this again, you would just go to court and say they waived it five years ago, and it would be up to that court to figure out whether that's the implication of whatever we were to say, right? I'm suggesting the prudent course is to wait. They're saying in August they have a due date. See if they. But I'm still troubled by. Oh, go ahead. I'm sorry. They do, don't they? August 20th is when the 90-day run. That is correct. That is correct. Yeah. But so I'm troubled by this idea, though, that this agreement would go forward with. This provision, I think, is problematic under Hall Street. OK, so. But so we're going to say, OK, but this agreement is fine. They waived. It goes forward. It's just like Judge Tappar was saying. We're essentially blessing an illegal agreement, aren't we? I mean, it's not a contract to commit murder or something, but, I mean, it violates public policy, doesn't it, or the FAA for us to let that go forward? Well, if the court is concerned about that, then proceeding and deciding the question of Section 6 is fine with us as well, and we have solid arguments for why that provision ultimately should be severed from the contract. I would like. But your argument is it should be severed in the sense that the arbitration then becomes like any other FAA binding arbitration. Section 4 would stay. That's exactly. You go to arbitration. If you want to go to court to get a judgment, the court's limited by Section 10 and Section 11 on what its review could do. I think that's exactly right. I think the decision by then Judge John Roberts in the Booker v. Robert Half International case is pretty instructive on that point, where you've got a severability clause like we do in this contract, and you've got a provision that is arguably invalid but doesn't infect the remainder of the arbitration provision. The answer really is to sever that invalid provision to maintain the party's agreement to arbitrate. It's a huge alteration in the bargain, isn't it? I mean, I bargain for something where I can go to court and basically negate the award. I understand I've got to be pretty sure that I'm going to win, and I've got to have a lot at stake in order to do that. I mean, it's like a nuclear option in terms of filing this Section 6 lawsuit. But it's there. It's a check. I mean, it gives me more options than Section 10 or Section 11 of the FAA. It is there, and, Your Honor, I think this is an instance where the Potawatomi case actually is fairly useful as a contrast. I mean, as Judge Roberts, as Judge Russell found in our case, the Section 4 arbitration provision and the Section 6 judicial determination provision are entirely separate provisions of the contract. But more importantly, the right to arbitration under Section 4 is in no way conditioned on the right to a judicial determination under Section 6. And crucially, in Potawatomi, as Judge Russell also recognized, that was not the case. You had both provisions entwined within a single section. And, in fact, the arbitration right in Potawatomi, in that compact, was expressly subject to the right to actual judicial review of the arbitration award. And so I think there is a really significant difference between the two contracts. And, you know, if the parties here had intended for the right to arbitration to be conditioned upon the right to this Section 6 judicial determination provision, they could have easily done that. They could have made it conditional. But they did not, unlike the parties in Potawatomi. And I really think it's important to – But isn't, like, Section 4.4 cross-references Section 6? I mean, it's pretty clear that they're entwined, as your opponent said, right? I would respectfully disagree on that point, that they're intertwined. I don't think they are. I don't think the right to arbitration is in any way conditioned upon the right to judicial determination under Section 6. And I think you could cut Section 6 entirely from the contract, and you would still have a complete arbitration agreement. No doubt you could. I agree. You could take Section 6 out. You'd have an agreement. You'd have binding arbitration like any normal, by the way, contract with a normal arbitration agreement. You wouldn't have this thing. But we have this thing. I know. And we bargained for it. Somebody bargained for it. I want to get to your point about this question of whether they're intertwined. They're really not. There's language that kind of recognizes the existence of both. For example, in 4.4, I believe the parties agreed that they wouldn't bring any other action besides this Section 6 action. But that kind of means what it says. It doesn't in any way condition arbitration upon the judicial action. There's another provision that talks about while the judicial action is pending, the allocation under the arbitration award will apply. That's just sort of a practical recognition that a party has chosen to take the risk to bring this judicial action and potentially fix it. Your main point is excising Section 6 and then these little references does nothing to Section 5 or Section 4. That is absolutely correct, Your Honor. And briefly, just to address this notion that Section 3 should be severed is pretty outrageous. I mean, that's the provision that actually sets the initial allocation 100% to Poly 1. And I thought I heard during the opening part that they were suggesting that that should be stricken. There's no basis to strike that provision. That would really gut the entire contract. But I want to make one other point on this materiality argument quickly. Poly 1's argument today that Section 6 is somehow material to this contract is directly contrary to their conduct for the past 12 years. I mean, if they say they would not have entered this contract without the Section 6 right, that's demonstrably untrue. Because we know for 12 years they have brought arbitration actions knowing that they did not have the right to subsequently pursue a Section 6 proceeding because of Hall Street. And yet they went right ahead and brought these actions knowing they had a Section 6 provision that was potentially invalid. It wasn't until – Potentially invalid. I'm sorry? That's true. But that's the basis for their argument. I mean, they say it's indisputably invalid in their brief. So they can't really have it both ways. And it wasn't until this non-binding decision in Potawatomi comes along in 2018, and they were losing in the then existing arbitration pretty badly, that they decide, oh, we better raise this 10-year-old argument about Section 6. And they're doing that as a pretext to invalidate the entire arbitration agreement. And I know you make this argument, but I just want to understand. So I get your argument that if we're going to get to this, if they haven't waived, we should just strike Section 6. Right. I just want to know the implications, because I still haven't necessarily understood what the implications are, leaving an illegal contract in place. Where do we draw the line? So, okay, it's contrary to the FAA and Supreme Court precedent. What if it's contrary to the Constitution? I mean, can you waive? Where is that line? No. I think that probably one can certainly waive using an allegedly invalid provision of an agreement as a basis to strike an entire arbitration agreement. But I think for the court, leaving an invalid provision in the contract is problematic, and eventually that would have to be addressed. I'm not sure that now is the right time to do it, because we can wait and see if it will arise in the future. But at some point I do think that would need to be addressed. But we're not enforcing the agreement, right? Right now. Are we enforcing an illegal agreement? If we let it stand, are we? We don't enforce it. No, you're not enforcing it. Nothing's happening on that point just yet. And Judge Russell did give a brief analysis of his view on the validity of Section 6, but also on the severability of Section 6, leaving the arbitration agreement intact. He thought that was definitely. One more question. I'm sorry, but can we, if we were to say they waived or just affirm Judge Russell, it doesn't mean we're deciding the question, although I know you want us to, of whether they waived into the future. We would have to explicitly say that, right? Well, yes, and I think it's clear. But yes, yes. I see my time's out. Do you understand why? No, I understand. I understand the point. If I may say one more sentence. One more. The entire concept of waiver that they're making is based on futility, and when you go and read those futility cases, this case would be the very first of its kind where you're not talking about a controlling authority preventing one from seeking to invalidate an arbitration agreement, nor do you have a controlling authority then allowing one to. Do you think that the estoppel and res judicata theories are stronger reasons for having the estoppel or the waiver go on into the future? Absolutely. In other words, waiver seems more prudential, but if we say you're judicially estopped, does that look like it would apply for all time? Yes, Your Honor. More than just a waiver? Yes, Your Honor, it would. I would argue that all three would work to apply to the future, but certainly. Judicially estoppel, I also struggle with enforcing an illegal contract, knowingly allowing. I agree with Judge Malvini. It's one thing to say we're not making passing judgment on the contract. We're just saying it's waived or stopped. It's another thing to say that goes on forever with an illegal contract, if we decide Section 6 is illegal. Based on 12 years of conduct, clearly taking the position that this agreement is valid and enforceable, that conduct doesn't disappear as we go into the future. It seems like a situation where a waiver should be held in perpetuity against Polly Warren. I'm sorry. Where do you draw the line? What if it was an involuntary servitude contract? Would you say, okay, that's on? Because waivers are knowing and intentional relinquishment of a right. And again, to bring you to the criminal context, we do that all the time with constitutional rights. Yeah. No, I would not give that answer for an involuntary servitude situation. Here, you've got a party that waived its right for 12 years and then didn't take any action to enhance. So what if this was involuntary servitude and they waived for 12 years? I think you've got a completely different situation there. Why? What's the line? Well, I mean, I think you have to look at the conduct of the party. Here, the conduct of the party was Polly Warren, for whatever reason, chose not to enforce its alleged right regarding Section 6 and seeking to invalidate the agreement. And then when it started losing in an arbitration matter, decided, well, we better resort to this nuclear option. And that, to me, is dramatically different from a situation of involuntary servitude. I mean, I don't know. I'm not objective here, but this is an incredibly clear case of waiver, and you really couldn't find one that's more strong. Okay. Thank you. Just a few points on rebuttal. Can I ask you one before you do it? Yes, please. If your friend on the other side makes a pretty good argument as to why we could excise Section 6, the FAA would kind of take its place and the contract would live on with the benefits of the bargain. Where is the fault in that argument? Because as they point to, it's pretty easy to strike the references to Section 6 everywhere else. Where does it become critical to another provision? What provision specifically? Well, first I want to say the parties bargained for the arbitration to be nonbinding at the election of either party for any reason or for no reason and to return to court where they started to litigate their dispute. And stripping that away and only allowing FAA review would materially change the basis of that bargain. But so would striking the entire arbitration provision. It changes because that's what they want. They want to arbitrate. They're saying, fine, you want to get rid of Section 6, get rid of Section 6. But we still want the arbitration that was the heart. And you yourself point out that's what Hall Street's all about. It's about the sanctity of arbitration and the critical nature of arbitration. But as the Hall Street court also pointed out, when the question is whether there's a valid agreement to arbitrate, just pointing to the general policy faving arbitration is, quote, begging the question. So where in here does it say, still, where does Section 6 become critical to another provision? So looking to the agreement as a whole. No, I want a specific provision. If I can go through today with CRAN and excise every one and it doesn't materially alter any other section, then so where can't I do that? Okay. So looking first to Section 3. Section 3 defines allocable costs. The only place in the arbitration agreement that allocable costs are to be determined is in an arbitration. That's a term of art for the purpose of the contract. Right. Then moving to Section. No, but I'm looking for a part where Section 6 is critical to that section. Does that make sense? Yeah. And then, well, and the point I'm getting at is it's throughout. And so I think I would move from Section 3 then to Section 4. Section 4.4 says the sole, to answer one of the first questions your honors asked, Section 4.4 says except as provided in Section 6, neither Polly 1 nor Westlake shall engage in litigation with the other party regarding any dispute over the allocation of allocable costs, and so on. That's the provision that makes arbitration mandatory. And if FAA review were the only review available to the parties, that would materially change the basis of the bargain because, as this Court has observed in the past, FAA is among the most exacting standards of review known to law. So if we're going to pick one, let's say you're going to lose, which is your worst poison? Is it waiver and maybe a chance to challenge in the future or excising Section 6? Well, let me speak to waiver because, yeah. Go ahead. I really would encourage this Court to reach the merits. There is definitely going to be, there are at least three or four scenarios. So does that mean you take the merits and Section 6 being struck out? No, we think the whole arbitration clause has to go with Section 6. But here's why this Court should reach the merits even if it has lingering concerns about waiver. Westlake has mistaken that there's a significant insurmountable disincentive to bringing a Section 6 action. In fact, Section 6.5, subsection B, provides that the attorney fee shifting provision does not apply if the only issue is the amount of allocable costs. And even if Section 6 were, even if the attorney fees were a significant disincentive, that's the same as any fees shifting statute. But nobody's filed a suit yet, right? That's correct, Your Honor. Not the first time and the clock is ticking now, right? That's correct. It will be due at the earliest, August 20th of this month. And Poly 1 does intend to file a challenge. I'm not in a position to represent the contents of that challenge, but absolutely will happen. So that's one case in the very near future that this legal question of law that's currently presented squarely in the briefing will arise again. I'm sorry. I just want to make sure I understood. You do intend to do something before August 20th? Yes, Your Honor. Is that what you're saying? Another scenario in which this may arise. So the award's going to be vacated? There will be no invoice. That's because, yeah, under Section 6, there's also potentially But the preliminary injunction, of course, is gone, long gone, right? The injunction with respect to this arbitration is. But in the complaint, Poly 1 requested injunctive relief with respect to enforcement of the agreement at all. So the injunction involving the agreement itself is still a live controversy? Yes, Your Honor. And there's a claim for declaratory relief as well. Anything further? Judge Guy, anything? No, thank you. All right. Thank you, counsel. Thank you, Your Honor. The case will be submitted. Thank you both for your very thoughtful arguments.